IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs, at Knoxville, April 23, 2019

## YASIN SOLOMON HAWKINS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2015-C-2127    Mark J. Fishburn, Judge**

_____

**No. M2018-02155-CCA-R3-ECN**

_____

After a bench trial, a trial judge convicted the Petitioner, Yasin Solomon Hawkins, of aggravated robbery and sentenced him as a career offender to thirty years in the Tennessee Department of Correction. The Petitioner appealed his conviction presenting only the issue of whether the trial court erred when it denied his motion to suppress his statement to police. This Court affirmed the trial court's judgment. *State v. Yasin S. Hawkins*, No. M2017-02439-CCA-R3-CD, 2018 WL 4520949 (Tenn. Crim. App., at Nashville, Sept. 20, 2018), *perm. app. denied* (Tenn. Jan. 16, 2019). The Petitioner then filed a timely petition for writ of error coram nobis alleging that his arrest warrants were newly discovered evidence and that they were procedurally flawed and invalid. The trial court summarily dismissed the petition finding that the arrest warrants were not newly discovered evidence and that, even if the warrants were flawed, any defect was cured by the indictments. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Yasin Solomon Hawkins, Whiteville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Janice Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a robbery of a Nashville hotel located on Old Hickory Boulevard. We summarized the facts presented at the motion to suppress hearing and at

trial as follows:

> The [Petitioner] used a gun to demand money from the hotel employees and threatened harm if they did not give him "all of the money." After receiving the cash, the [Petitioner] fled the building and drove away in a car. The robbery was captured on the hotel's surveillance system. A Davidson County grand jury indicted the [Petitioner] for the aggravated robbery of Rita Patel and the aggravated assault of Atul Kumar.

## A. Motion to Suppress

> The [Petitioner] filed a motion to suppress his statement made to the police. He asserted that, due to his intoxication, he was unable to make a knowing and voluntary waiver of his rights. At the hearing on the motion, the parties presented the following evidence: Sam Tetterton, a Metropolitan Nashville Police Department ("MNPD") officer, testified that he interviewed the [Petitioner] on July 17, 2016. The [Petitioner] had been involved in a single vehicle crash. Police officers at the scene of the crash notified robbery detectives about "an alert" associated with the [Petitioner], indicating that he should be interviewed about the hotel robbery. Detective Brian Stanley and Detective Tetterton conducted the video-recorded interview of the [Petitioner].

> . . . .

> The State presented the video-recording of the interview. . . .

> During the interview, the [Petitioner] explained that he came into debt ($1800 due to drugs) to someone, later identified as a drug dealer. The drug dealer, "Town," gave him the silver Dodge Challenger and made him commit robberies to repay the debt. The [Petitioner] explained to the officers how he crashed the vehicle. He said that the drug dealer chased him down in a white Honda. The [Petitioner] said that he did not wear a mask during the robbery and stated that he was on the surveillance video footage. He confirmed that he had robbed a hotel in La Vergne, a hotel on Bell Road, and one in Murfreesboro.

> The [Petitioner] said that he did not hurt anyone during the robberies and that he returned the pistol used during the robberies to the drug dealer. He provided the detectives with some information about the drug dealer. The [Petitioner] was responsive to the detectives' questions. He told the

detectives about his prior eighteen-year sentence and his drug addiction. While Detective Tetterton explained to the [Petitioner] the process that the Dodge Challenger would undergo, Detective Stanley left the room. The [Petitioner] stated that he was high, and Detective Tetterton asked if he was high when he conducted the robberies. The [Petitioner] sorted through items in his wallet searching for a phone number. He asked if he would be able to place a phone call, and Detective Tetterton confirmed that he would be allowed to make a phone call. The [Petitioner] told Detective Tetterton that he had been sleeping in the Dodge Challenger because he was homeless due to his drug addiction. He told Detective Tetterton that he was tired.

. . . .

## B. Bench Trial

On July 9, 2015, Radhika Patel was working as an assistant manager at a hotel located on Old Hickory Boulevard in Davidson County, Tennessee. She saw the [Petitioner] walking around the hotel and assumed he was a guest of the hotel. The [Petitioner] came into the lobby area, and she offered him assistance, which he declined. The [Petitioner] lingered in the area for approximately fifteen minutes looking at "fliers." The hotel manager, Atul Kumar, also offered the [Petitioner] assistance and, again, the [Petitioner] declined. A guest came in regarding a question about his reservation and, after the guest left, the [Petitioner] raised a gun and demanded the money in the hotel's cash drawer. Ms. Patel opened the drawer and gave him all of the cash inside. While pointing the gun at the manager, the [Petitioner] ran out the door with the cash and got into a Dodge Challenger and drove away.

On the morning of July 9, 2015, Officer Brian Murphy, an MNPD officer, responded to a call about a suspicious person at an apartment complex. Officer Murphy found the [Petitioner] asleep in a breezeway of a building and woke the [Petitioner]. The [Petitioner] was distinctly dressed in a "very noticeable Hawaiian shirt" and had "very identifiable tattoos." The [Petitioner] provided his name and said that he was waiting for the pool to open. He admitted that he was not a resident of the apartment complex but stated that he lived in a townhome nearby. The [Petitioner] was cooperative and when the apartment complex elected not to prosecute for trespass, the [Petitioner] left.

Toward the end of his shift, Officer Murphy heard a dispatch that released a suspect description related to a hotel robbery. The suspect description included clothing that matched what the [Petitioner] had been wearing that morning at the apartment complex. Officer Murphy responded to the hotel, watched surveillance footage, and confirmed that, based upon his earlier interaction with the [Petitioner], the robber in the surveillance footage was the [Petitioner].

Detective Tetterton testified consistently with his testimony at the suppression hearing. He identified the video recording of his interview with the [Petitioner], and the trial court admitted the video recording into evidence.

After hearing this evidence, the trial court found the [Petitioner] guilty beyond a reasonable doubt of aggravated robbery and acquitted the [Petitioner] of the aggravated assault charge. At a subsequent sentencing hearing, the trial court imposed a sentence of thirty years in the Tennessee Department of Correction.

*Hawkins*, 2018 WL 4520949, at *1-3.

On October 15, 2018, the Petitioner filed a petition for a writ of error coram nobis. In it, he alleged that he had not received his arrest warrants with his original packet of discovery but had written to the Davidson County Criminal Court clerk in order to obtain a copy of his arrest warrants. He asserted that he discovered that the arrest warrants were not signed by a judge or magistrate. He then wrote the Davidson County Criminal Court clerk again asking for signed copies of the arrest warrants and received that which he asserts are "forged" copies. He argued that he was, therefore, falsely arrested pursuant to these warrants, that the State failed to disclose this exculpatory evidence, and that his void warrants invalidate all subsequent proceedings.

The trial court summarily dismissed the petition for writ of error coram nobis. In its order, the trial court found:

This matter is before the Court upon a petition for writ of error coram nobis in which the Petitioner submits copies of his arrest warrants and claims they were improperly executed. He claims that because the copies he received did not show that they were endorsed by the magistrate or the arresting officer he is entitled to relief. The judgment became final in his case on November 4, 2017, and this petition was filed on October 15,

4

2018.

. . . .

This case was timely filed; however, what [the] Petitioner is asserting is a supposed defect in *procedure*, not newly discovered *evidence*. Furthermore, there has been no showing that the copies of the warrants [that the] Petitioner submitted changed the outcome of the case in any way. [The] Petitioner was indicted on this case on September 15, 2015. If one were to assume, strictly for argument[']s sake, there was a defect in the warrants, these defects were cured by the Grand Jury indictment. The petition is DISMISSED.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that his arrest warrants were improperly executed and forged and this was "newly discovered evidence" and also a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), in that the warrants were suppressed by the State. The State counters that the trial court properly dismissed the coram nobis petition. It posits that there was no evidence seized from the Petitioner at the time of arrest that inculpated him. Furthermore, the Petitioner was caught and identified from hotel security video as being the perpetrator of this offense, so he cannot show how any evidence would have resulted in a different judgment. Finally, the State contends that any error was procedural and cured by the subsequent indictment. We agree with the State.

The writ of error coram nobis is a post-conviction mechanism with a long-standing history rooted in the common law and the State of Tennessee. *See State v. Vasques*, 221 S.W.3d 514, 524-26 (Tenn. 2007). It is well-established that the writ of error coram nobis "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). The decision to grant or to deny a petition for the writ of error coram nobis on its merits rests within the sound discretion of the trial court. *Ricky Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *Vasques*, 221 S.W.3d at 527-28). We, therefore, review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). Tennessee Code Annotated section 40-26-105(b) provides, in pertinent part:

Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating

5

to matters which are litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at trial.

A petition for a writ of error coram nobis may be dismissed without a hearing and without the appointment of counsel for a hearing if the petition does not allege facts showing that the petitioner is entitled to relief. *See Harris*, 301 S.W.3d at 153-54 (Koch, J., concurring in part and concurring in result) (noting that evidentiary hearings on coram nobis petitions need only be conducted when they are essential and that petitions may be dismissed if the averments in the petition are insufficient to warrant relief); *see also Clarence D. Schreane v. State*, No. E2012-01202-CCA-R3-PC, 2013 WL 173193, at *7 (Tenn. Crim. App., at Knoxville, Jan. 16, 2013) (citing *Richard Hale Austin v. State*, No. W2005-02591-CCA-R3-CO, 2006 WL 3626332, *6 (Tenn. Crim. App., at Jackson, Dec. 13, 2006)). "As a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record . . . will not justify the granting of a petition for the writ of error coram nobis when the evidence, if introduced," might not have resulted in a different outcome. *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995) (citations omitted); *see also Vasques*, 221 S.W.3d at 525-28 (noting that proper standard of review is whether the proffered evidence "might have" resulted in a different outcome rather than whether it "would have" resulted in a different one).

In this case, we conclude that the trial court did not err when it summarily dismissed the Petitioner's petition for a writ of error coram nobis. We first note that there are in fact signed copies of the arrest warrant in the record. While the Petitioner alleges that these are forged, he offers no proof to support that contention, other than the unsigned copies originally forwarded to him. Further, this court has also held that a valid indictment cures any defect in a warrant. *See Bobby Lee Scales, Jr. v. Dwight Barbee, Warden*, No. W2012-00163-CCA-R3-HC, 2012 WL 4017375, at *1 (Tenn. Crim. App., at Jackson, Sept. 12, 2012), *perm. app. denied* (Tenn. Feb. 12, 2013). Finally, in the event that the warrants were arguably invalid, the Petitioner cannot show that his judgment "might have" been different had evidence seized during his arrest been suppressed.

To the extent that the Petitioner contends that the State violated *Brady* by not disclosing his arrest warrants, the Tennessee Supreme Court recently has held that "a coram nobis proceeding is not the appropriate venue to determine whether [a petitioner's] constitutional rights under *Brady* were violated." *Nunley v. State*, 552 S.W.3d 800, 821 (Tenn. 2018). We conclude that the Petitioner is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE